UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Benjamin D. Mikkalson,                                   Civ. No. 10-827 (RHK/LIB)

        Petitioner,

v.                                                       REPORT AND RECOMMENDATION

Mark Sizer and Nick Hendrickson,
State of Minnesota

        Respondents.

---

This matter is before the undersigned United States Magistrate Judge on Petitioner's application for habeas corpus relief under 28 U.S.C. § 2254. The case has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. On March 26, 2009, Petitioner Benjamin D. Mikkalson ("Petitioner") was convicted of Disorderly Conduct,[1] and Obstruction of the Legal Process[2], in Stearns County District Court. (Pet. [Docket No. 1], p. 1).[3] Petitioner's probation period extended until April 2, 2010. (Id.)

Petitioner filed the current federal habeas corpus petition under 28 U.S.C. § 2254 while on probation on March 17, 2010, therefore, meeting the "in custody" requirement of § 2254. See Levya v. Williams, 504 F.3d 357, 363 (3rd Cir. 2007) (stating the "in custody" requirement of § 2254 is satisfied when the petitioner is on probation.)[4] The petition lists six grounds for relief:

---

[1]     Misdemeanor, Minn. Stat. § 609.72 Subd. 1.

[2]     Misdemeanor, Minn. Stat. § 609.50 Subd. 1(2).

[3]     The Petition itself is unpaginated. The page numbers in the citation above refer to the page within the Docket. For example, (Pet. [Doc. No. 1], p. 1.) refers to Doc. No. 1, Page 1 of 11.

[4]     The proper respondent in a § 2254 habeas case is the state officer who has custody of the Petitioner. Rule 2(a) of the Rules Governing Section 2254 Cases in the United

- Ground One alleges "[t]he trial court's failure to consider [and the appellate court's failure to address, consider and rectify] the federal constitutional ramifications of the police officer's foot in the threshold of the defendant's doorway, over counsel's objection, and instead allowing such intrusion to become the basis of the defendant's verbal resistance and the rationale for the resultant criminal charge(s) **is an erroneous and unreasonable application of Federal law**. . . (Pet., p. 9).

- Ground Two alleges "[t]he trial court's failure to consider [and the appellate court's failure to address, consider and rectify] the federal constitutional ramifications of the police officer's foot in the threshold of the defendant's doorway, to allow late amendment by the prosecutor of the charges after jury empanelment and to so reduce the possibility for Defendant to obtain a fundamentally fair trial, despite timely objection by counsel, **are so egregious as to constitute a denial of due process and/or equal protection**. . . (Pet., p. 9);

- Ground Three alleges "[t]he trial court's failure to consider [and the appellate court's failure to address, consider and rectify] the federal constitutional ramifications of the police officer's foot in the threshold of the defendant's doorway, to allow late amendment by the prosecutor of the charges after jury empanelment and to so reduce the possibility for Defendant to obtain a fundamentally fair trial, despite timely objection by counsel, **are so arbitrary and capricious as to constitute an independent denial of due process violation**. . . (Pet., p. 9);

- Ground Four alleges "[t]he trial court's rulings of the law and the Appellate Court's supervisory review, while perhaps satisfactory procedures in the abstract, in reality, were not appropriately applied in this instance, sufficiently refuting Defendant's opportunity for "full and fair litigation" of a United States Constitutional 4th Amendment claim, **such that Stone v. Powell, should not fairly bar Defendant's application for relief**. . . (Pet., p.10);

- Ground Five alleges, "[a]fter having reviewed the record, both the trial court and the Appellate court, **failed to demonstrate an adjudication on the merits**, of the arguments put forth by counsel to Defendant, such that

---

States District Courts. Petitioner has not identified the two individual Respondents by title. Furthermore, the Respondent has not identified which of the named Respondents was Petitioner's custodian when the Petition was filed. The Court presumes that one of the named Respondents is the appropriate Respondent because no objection has been raised, but the Court will refer to Respondents in the plural.

the Defendant was denied substantive due process. . . (Pet., p.10);

- Ground Six alleges, "[a]fter having reviewed the record, both the trial court and the Appellate court, **demonstrated a misapprehension of the facts and constitutional arguments** put forth by counsel to Defendant, such that the Defendant was denied substantive due process. . . (Pet., p. 10).

Respondents filed an Answer and a Memorandum in Opposition to Granting Writ of Habeas Corpus ("Resp't. Mem."). [Doc. Nos. 9 and 10]. In the memorandum, Respondents argued Ground One of the Petition is barred by Stone v. Powell because Petitioner fully and fairly litigated his claim in state court. (Resp't Mem., p. 2-5). Respondents also argued Petitioner's claims in Grounds Two through Six of the Petition were procedurally defaulted because Petitioner failed to fully and fairly present his federal constitutional claims in state court.

Petitioner filed a reply. (Petitioner's Reply to Respondent's Answer ("Pet'r. Reply"), [Doc. No. 12]). In his Reply, Petitioner contends his claims are not *Stone*-barred because the "search" issue he raised after the charges against him were amended at trial was different from the "seizure issue" that the trial court and Minnesota Court of Appeals ruled on. (Id. at 2). Petitioner explained his contention, in part, as follows:

> As a practical matter, the Petitioner did not take the "seizure" of the person within the "threshold" of his home, up on direct appeal. Petitioner freely admits that had the State of Minnesota, not elected (late in the game and at trial) to change the Disorderly Conduct charge from brawling, fighting to loud and profane (different charges), he would have been foreclosed from revisiting the issue of the altercation at the doorway as irrelevant[.] Importantly, this does not foreclose all constitutional analysis however. Because the state elected to charge, exclusively upon the incident at the doorway, Petitioner should, at trial, have been fairly heard on the 4th Amend. considerations surrounding the "search" of the Petitioner's home, via placement of officer's foot in the doorway. The 4th Amend. issue at trial (in discussions out of the

> jury's presence) was whether placement of the police officer's foot within the Petitioner's home (without a warrant, without permission and without exigent circumstances), was itself a constitutional violation, that should act as a "shield" of Petitioner's loud and profane conduct.

(Id.)

Petitioner also argued his claims were exhausted and not procedurally defaulted. (Id. at 4-6). However, Petitioner stated he would withdraw any claims this Court found to be unexhausted. (Id. at 6).

For the reasons discussed below, it is RECOMMENDED that the petition be DENIED.

## I. FACTUAL BACKGROUND

The facts, as found by the Minnesota Court of Appeals on Petitioner's direct appeal of his conviction, are as follows.

> On March 2, 2006, at 2:22 a.m., Officer Lucas Dingmann and Sergeant Lloyd Orth of the St. Cloud Police Department were dispatched to the 600 block of 8th Street South in response to a report of a large group of people fighting in the road. When Sgt. Orth arrived on the scene, he took a statement from two males, who appeared to be injured. The two males indicated that two other individuals who were involved in the fight had run into appellant Benjamin D. Mikkalson's residence. At the same time, Officer Dingmann spoke to a female, who also directed him to appellant's residence.
>
> Officer Dingmann went to appellant's residence and knocked on the door. There was a dispute between the parties as to who opened the door of the residence. But the district court, following a contested evidentiary hearing, found that appellant answered the door. During the conversation between Officer Dingmann and appellant, appellant refused to identify himself. Sergeant Orth could hear an individual, later identified as appellant, yelling profanities at Officer Dingmann. Eventually, appellant asked to speak to Officer Dingmann's supervisor; as a result, Sgt. Orth approached. Sgt. Orth testified that when he approached appellant's residence, the front door was open, and appellant was

> "standing in the threshold of the doorway." Sgt. Orth noted that appellant appeared to be drunk and had bruises on his face. Sgt. Orth testified that he subsequently arrested appellant for disorderly conduct and that appellant was standing at the threshold of his residence when the arrest occurred. On cross-examination, Sgt. Orth defined the threshold as the "[d]oorway, entry area on the threshold of the door" and extending "about a foot" into the residence. Sgt. Orth then transported appellant to a hospital at appellant's request. After appellant's injuries were treated, he was cited for disorderly conduct and released.
>
> Appellant moved to dismiss the charge and void his arrest, claiming that the warrantless arrest was improper. The district court held an evidentiary hearing and subsequently denied appellant's motion. The district court ruled that the warrantless arrest was proper because appellant was arrested in a public place and because appellant committed an offense in an officer's presence. Before trial, the state amended the complaint to add obstruction of legal process.
>
> At trial, appellant attempted to raise before the jury the issue of whether his arrest was proper. The state objected, and the district court sustained the objection, finding that it had already ruled on the validity of the arrest. Appellant was convicted of both counts. Appellant moved for a new trial based on the following reasons: 1) in the interest of justice, 2) Irregularity in the proceedings of the court, jury and prosecution "such that [appellant] was deprived of a fair trial, 3) accident or surprise which could not have been prevented by ordinary prudence, 4) Errors of law occurring at trial and objected to at the time or, if no objection was required, assigned in this motion, and 5) The verdict or finding of guilty is not justified by the evidence, or is contrary to law. Following a hearing, the district court denied the motion.

State v. Mikkalson, No. A-07-2339, 2008 WL 5215866, at *1-2 (D.Minn. Dec. 16, 2008)

rev. denied (February 25, 2009).

## II. PROCEDURAL HISTORY

Petitioner filed a direct appeal of his conviction, and initially stated that the issue on appeal was "[w]hether incursion by police beyond the clear threshold of Defendant's residence

-5-

without a warrant, without consent and without authentic exigent circumstances violates the Minnesota Constitution, Article I, Section and/or the U.S. Constitution Fourth Amendment prohibitions of unreasonable search and seizure." (Appellant.'s Br. and App., p. 2-3, No. A07-2339, State v. Mikkalson (Minn. Ct. App.) "Appellant's Br." [Appendix, Doc. No. 9]). Later in his appellate brief, Petitioner stated, "the issue then on appeal is whether the State has carried their burden of proving exigent circumstances sufficient to allow entry." (Id. at 10). In the final paragraph of his brief, Petitioner also noted that, at an evidentiary hearing, the City Attorney claimed that constitutional protections are inapplicable "in the threshold" of the residence. (Id. at 15). Petitioner cited a Minnesota Supreme Court case for the proposition that absent exigent circumstances, the threshold [entrance to the house] may not be reasonably crossed without a warrant." (Id. at 15, n.8).

The Minnesota Court of Appeals denied relief in a decision dated December 16, 2008. State v. Mikkalson, 2008 WL 5215866. The court held Petitioner was arrested in a public place for Fourth Amendment purposes. State v. Mikkalson, 2008 WL 5215866, at *3. The court cited the United States Supreme Court case, U.S. v. Santana, 427 U.S. 38, 43 (1976), for the proposition that "a valid arrest initiated in a public place cannot be defeated by retreating into a residence." (Id.) The Court cited state law for the proposition that, under Santana, "an arrest is considered to have occurred in a public space for Fourth Amendment purposes when the arrest was initiated at the threshold of the residence." (Id.) Because Petitioner was at the threshold of his residence, the court held police did not need a warrant to arrest Petitioner. (Id.) Petitioner appealed to the Minnesota Supreme Court, which denied review on February 25, 2009. (Id.) Petitioner's habeas corpus petition followed.

## III. DISCUSSION

A.      **Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) instructs federal courts to engage in a "limited and deferential review of underlying state court decisions." Mark v. Ault, 498 F.3d 775, 782-83 (8th Cir. 2007). Under the AEDPA, relief may not be granted to the petitioner unless the state court's adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).

Federal courts consider a decision "contrary to" precedent when a state court "arrives at a conclusion opposite to that reached by the [Supreme] Court on a question of law" or "decides a case differently than the [Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). An "unreasonable application" of federal law exists when the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 407-8. "A federal court may not issue the writ simply because it 'concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Lyons v. Luebbers, 403 F.3d 585, 592 (8th Cir. 2005) (quoting Williams, 529 U.S. at 411)). During review of a state court decision, a "federal court also presumes that the state court's factual determinations are correct." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000). A petitioner can only rebut the presumption by "clear and convincing evidence." Id.; 28 U.S.C. § 2254(e)(1).

B.      **Ground One:  Petitioner's Fourth Amendment Claim**

In Petitioner's first ground for relief, he argues that the trial and appellate courts failed to consider his alleged Fourth Amendment violation, that a police officer put his foot inside Petitioner's doorway to prevent him from retreating into the house and closing the door. Petitioner asserts that he did not raise this particular argument in the evidentiary hearing that was held before trial, because it was unclear to Petitioner that the prosecutor would only try him for the disorderly conduct that occurred between himself and the police at his doorway, as opposed to trying him for the earlier disorderly conduct of fighting that the police were investigating when they came to his door. (Pet., p. 7-9.)

Respondents contend Petitioner is barred from habeas relief under <u>Stone v. Powell</u>, 428 U.S. 465 (1976), because he had an opportunity to fully and fairly litigate his Fourth Amendment claim in state court. Respondents further contend that there is no distinction under the Fourth Amendment between the argument that Petitioner made to the trial court before trial, that there was no probable cause to invade his doorway without a warrant to arrest him for fighting, and Ground One of the habeas petition, that there was no probable cause for his warrantless arrest in the doorway based on his confrontation with police at the doorway. On the merits of the claim, Respondents contend that because the officer had probable cause to arrest Petitioner in a public place, the threshold to his doorway, it is irrelevant that prior to his arrest the officer put his foot in the doorway to prevent it from being closed. Respondents asserts the facts were fully litigated in the trial court.

The United States Supreme Court, in <u>Stone v. Powell</u>, held that:

> [w]hile courts, of course, must ever be concerned with preserving the integrity of the judicial process, this concern [deterring illegal police conduct by barring introduction of evidence that was unconstitutionally seized] has limited force as a justification for

> the exclusion of highly probative evidence. The force of this
> justification becomes minimal where federal habeas corpus relief
> is sought by a prisoner who previously has been afforded the
> opportunity for full and fair consideration of his search-and-seizure
> claim at trial and on direct review.

428 U.S. 465, 485-86 (1976). Thus, the court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id. at 494.

In Willet v. Lockhart, the Eighth Circuit Court of Appeals held that courts must use a two part test in analyzing whether the Supreme Court's decision in Stone v. Powell bars a habeas petitioner from obtaining habeas relief on a Fourth Amendment claim. 37 F.3d 1265, 1273 (8th Cir. 1994). "Under this test, a Fourth Amendment claim is *Stone*-barred and thus unreviewable by a federal habeas court, unless either the state provided no procedure by which the prisoner could raise his Fourth Amendment claim, or the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system." Id. In this case, the first part of the test is satisfied because the State of Minnesota has a procedure that was used by Petitioner to raise his Fourth Amendment claim(s). See Poole v. Wood, 45 F.3d 246, 249 (8th Cir. 1995) (noting it was clear that the opportunity for a full and fair litigation was provided to the Petitioner on the Fourth Amendment issue.) Here, Petitioner raised Fourth Amendment claims in the trial court, in a motion for a new trial, on direct appeal, and in a request for review to the Minnesota Supreme Court. He was given an opportunity to litigate his claims.

Under the second part of the test, Petitioner alleges that he was foreclosed from using the procedure due to an unconscionable breakdown in the system. He claims that whether through neglect or oversight, the Minnesota Court of Appeals did not address his Fourth Amendment

concerns. (Pet., p. 8). Petitioner states,

> [n]ot one word in the opinion is devoted to the subject of the initial incursion within the doorframe by the police, which directly precipitated the escalation of the tensions and the resultant criminal charges. The Court focuses instead on the Scotus holdings allowing arrest within the threshold under reasonable expectation of privacy exceptions. Each of the cases cited is inapplicable, where as in here, the police have intentionally breached the homeowner's zone of privacy and carved out their own 'public space' exception."

(Id., p. 8-9).

Petitioner presented only one issue on appeal, but he stated his issue in two different ways in his brief. Under the heading "Statement of the Issues," Petitioner stated the issue as "[w]hether incursion by police beyond the clear threshold of Defendant's residence without a warrant, without consent and without authentic exigent circumstances violates the Minnesota Constitution, Article 1, Section 10 and/or the U.S. Constitution Fourth Amendment prohibitions of unreasonable search and seizure." (Appellant.'s Br., p. 2-3). In the Argument section of his brief, Petitioner stated, "[t]he issue then on appeal is whether the State has carried their burden of proving exigent circumstances sufficient to allow entry." (Id. at 10). At the end of his argument, Petitioner noted the City Attorney had claimed at the evidentiary hearing that constitutional protections are inapplicable "in the threshold" of the residence. (Id. at 15). Petitioner argued to the Minnesota Court of Appeals that this was unfounded under state court precedent but, ultimately, it was the basis for the Minnesota Court of Appeals decision.

The Minnesota Court of Appeals held that a warrant was not necessary because the threshold to the doorway of a residence was a public space not subject to the protections of the Fourth Amendment. The court cited the United States Supreme Court case, U.S. v. Santana, 427 U.S. 38, 43 (1976), for the proposition that "a valid arrest initiated in a public place cannot be

defeated by retreating into a residence." This suggests the court considered the factual circumstances of Petitioner's arrest, that an officer placed his foot in the doorway so Plaintiff could not retreat into the house while they were questioning him.

The fact that Petitioner does not like how the court discussed and decided the case does not mean he was unable to present his Fourth Amendment arguments in state court before and during trial, in a motion for a new trial, on direct appeal, and to the Minnesota Supreme Court on a petition for review. See Newton v. Norris, No. 5:09CV00055 HDY, 2009 WL 1505348, at *5 (E.D. Ark. May 28, 2009) (quoting Chavez v. Weber, 497 F.3d 796, 802 (8th Cir. 2007) ("mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the [system.]")). The court in Newton noted it was aware of nothing that would prevent an appellate court from affirming a ruling of the lower court on a ground different than that relied upon by the lower court. Id. In this case, the Minnesota Court of Appeals affirmed the lower court's decision based on the public space exception to the Fourth Amendment as opposed to the trial court's ruling that exigent circumstances justified arrest without a warrant.

The Newton court also found that rather than a breakdown in the procedures for review, the appellant had the opportunity to brief the issue on appeal, but he wished he had done so more extensively. Id. The same is true in this case, as is obvious from Petitioner's Petition for Review of Decision of the Court of Appeals to the Minnesota Supreme Court, where he explained extensively the issues he believed the trial court and the Minnesota Court of Appeals should have addressed. (See Petition for Review of Decision of the Court of Appeals to the Minnesota Supreme Court, Doc. No. 13). He did not brief what he alleges to be a distinct illegal search issue in such depth to the Minnesota Court of Appeals. There was no breakdown in the procedures for review of Petitioner's Fourth Amendment claim. Thus, Ground One of the

Petition is *Stone*-barred.

###    C.   Grounds Two, Three, Five and Six

Petitioner's second, third, fifth and sixth claims allege due process and/or equal protection violations based on the same set of facts. Respondents contend these claims are procedurally defaulted because Petitioner failed to raise them in state court. In a petition for habeas corpus, a Petitioner must successfully show that he exhausted the state remedies for each claim he brings. 28 U.S.C. § 2254(b)(1)(A). The doctrine of exhaustion requires a petitioner to "fairly present" his federal claims to the state courts. Baldwin v. Reese, 541 U.S. 27, 29 (2004). Petitioners must present the substance of any federal claims "in each appropriate state court (including a state supreme court with powers of discretionary review)." Id. The petitioner must "have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997) (internal quotations omitted). When a prisoner fails to exhaust his state court remedies for a claim, and state procedural rules preclude any attempt to satisfy the exhaustion requirement for that claim, then the claim is not unexhausted, but rather "procedurally defaulted." Coleman v. Thompson, 501 U.S. 722, 729-32 (1991). Thus, if a state court remedy remains, courts classify a previously unraised habeas claim as "unexhausted," but if state court remedies are no longer available, then courts consider the claim "procedurally defaulted." Armstrong v. Iowa, 418 F.3d 924, 926 (8th Cir. 2005).

Here, Petitioner raised only one federal claim on appeal to the Minnesota Court of Appeals, whether incursion of the police officer's foot beyond the threshold of his residence violated the Fourth Amendment of the United States Constitution. Petitioner did not raise any

due process or equal protection claims on appeal to the Minnesota Court of Appeals.

In his reply brief, Petitioner admits he made his due process claims in the first instance to the Minnesota Supreme Court because his claims were based on the Minnesota Court of Appeals' failure to address his Fourth Amendment claim. (Pet'r. Reply, p. 6). In other words, Petitioner's due process claims did not exist until the Minnesota Court of Appeals issued its decision, thus, Petitioner could not have brought his due process claims any earlier than in his Petition for Review to the Minnesota Supreme Court. The Court agrees that Petitioner's due process claims did not exist until the Minnesota Court of Appeals issued its decision, because Petitioner's due process claims are premised on the Minnesota Court Appeals having failed to address a particular Fourth Amendment issue. Petitioner fairly presented his due process claims to the Minnesota Supreme Court in his Petition for review. Thus, the due process claims are exhausted, and Court will address Petitioner's due process claims on the merits.

Petitioner's due process claims are each premised on the Minnesota Court of Appeals' failure to address the particular Fourth Amendment issue Petitioner claims that he raised. In his Reply brief, Petitioner contends the issue he raised in the Minnesota Court of Appeals was an illegal search, not the illegal seizure issue that was addressed in an earlier evidentiary hearing. See Pet'r Reply, p. 3. As this Court explained in Part III(B) above, the Minnesota Court of Appeals addressed the one issue that was presented to it. In his brief to the Minnesota Court of Appeals, Petitioner did not make a clear distinction that he was alleging a new claim of an illegal "search," distinct from the illegal "seizure" issue he raised in the trial court. See generally Appellant's Br. [Doc. No. 9].

Petitioner's contention that the Minnesota Court of Appeals ignored his Fourth Amendment claim is not borne out by review of Petitioner's brief to the Minnesota Court of

Appeals, where he clearly argued the trial court erred in finding exigent circumstances to allow police officers entry into his doorway. See Appellant's Br., p. 10-13. The Minnesota Court of Appeals clearly addressed this issue. State v. Mikkalson, 2008 WL 5215866, at *3. The brief Petitioner presented to the Minnesota Court of Appeals, while it contains some references to what Petitioner now claims was an "illegal search" issue, did not set forth a new and distinct Fourth Amendment issue, so as to alert the Court of Appeals that it should review something other than whether Petitioner's arrest in the threshold of his residence violated the Fourth Amendment. Therefore, Petitioner's due process rights were not violated.

### D. Ground Four

In Ground Four of the Petition, Petitioner does not allege a particular violation of federal law; he argues that he was not granted a full and fair opportunity to litigate his Fourth Amendment claim. This allegation is subsumed under Ground One of the Petition and has been addressed in Part III(B) above.

## III. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [Docket No. 1] be **DENIED** and this action be **DISMISSED WITH PREJUDICE.**

## IV. CERTIFICATE OF APPEALABILITY

The Court grants a Certificate of Appealability where the petitioner makes a substantial showing of the denial of a constitutional right. See, 28 U.S.C. § 2253(c)(2); Tiedeman v. Benson, 122 F.3d 518, 523 (8th Cir. 1997). To succeed, the Petitioner must show that the issues are "debatable among reasonable jurists, a court could resolve the issues differently, or the issues

deserve further proceedings." <u>Flieger v. Delo</u>, 16 F.3d 878, 882-83 (8th Cir. 1994). Here, the Court finds it improbable that any other court would decide the issues Petitioner presents any differently or find that any issue warrants further proceedings. Thus, the Court further recommends that Petitioner should not be granted a Certificate of Appealability.

Dated: December 8, 2010

s/
Leo I. Brisbois
U.S. MAGISTRATE JUDGE

# N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by December 22, 2010**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.